Filed 7/30/26  Conservatorship of N.S. CA3

<u>NOT TO BE PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (El Dorado)

| | |
|---|---|
| Conservatorship of the Person of N.S. | C101409 |
| R.C. et al.,<br>     Petitioners and Appellants, | (Super. Ct. No. SP20190003) |
| v. | |
| K.S., as Conservator, etc.,<br>     Objector and Respondent; | |
| N.S.,<br>     Real Party in Interest and Respondent. | |

This is an appeal from a posttrial order awarding attorney fees in a conservatorship matter, which involved both a petition to remove the conservator for a dependent adult (Prob. Code, § 2650) and related and competing requests for a permanent restraining order under the Elder Abuse and Dependent Adult Civil Protection Act (the Act) (Welf. & Inst. Code, § 15600 et seq.).[1]  Although not specifically identified by the trial court's order, on appeal the parties agree the trial court relied on subdivision (t) of section 15657.03, which authorizes an award of attorney fees for a prevailing party in connection with a request for a restraining order under the Act, to award the fees at issue here.

---

[1]  Further undesignated statutory references are to the Welfare and Institutions Code.

1

Appellants, the former legal guardian of dependent adult N.S. and her husband (M.G. and R.C.), proceeding as self-represented litigants, argue the fee order must be reversed for various reasons, including the trial court's failure to apportion fees between those associated with the removal petition and those associated with the competing requests for a restraining order. As we shall explain, we find no basis for reversal. Accordingly, we affirm.

## I. BACKGROUND

### A. *N.S.'s Medical Condition*

Dependent adult N.S. was diagnosed as a young child with encephalitis, a serious medical condition involving acute inflammation of brain tissue. The condition resulted in disability such that N.S. required supervision and assistance with daily living activities. N.S.'s symptoms included grand mal seizures, aphasia (communication disorder), and behavioral issues. During his childhood and young adulthood, N.S.'s behavioral issues resulted in multiple incidents of elopement and numerous incidents requiring police intervention.

### B. *The Parties and Conservatorship*

In 2008, when he was seven years old, N.S. emigrated to the United States from Nepal. At that time, M.G.,[2] a United States citizen, was married to a relative of N.S.'s. N.S.'s mother (K.S.) and father (A.S.) agreed to allow N.S. to come to the United States so he could receive better medical care.

At all relevant times, M.G. lived in South Lake Tahoe. She was N.S.'s legal guardian from 2008 to 2019, when he turned 18 years old. At that time, N.S.'s biological mother (K.S.), who had emigrated to the United States from Nepal shortly after N.S.,

---

[2] In the appellate record, M.G. is sometimes referred to as C.G. or her middle name, Catherine. We refer to her as M.G.

became his conservator. The other members of N.S.'s biological family (father and two sisters) emigrated to the United States from Nepal in 2017.

Beginning in November 2017, N.S. lived with his biological family in South Lake Tahoe, although (as noted) M.G. remained his legal guardian until he turned 18 years old in 2019. At all times thereafter, N.S.'s father (A.S.) was N.S.'s primary caregiver.

According to M.G., in October 2021, A.S. pinned N.S. to the floor and forcefully poured a smoothie down his throat. Beginning in late January 2022, after M.G. made a complaint to the police about the incident, K.S. prevented M.G. from having any contact with N.S. K.S. also did not allow N.S. to have any contact with M.G.'s new husband (R.C.), who had been N.S.'s educational advocate since 2016 (after N.S. was expelled from school).

C.     Removal Petition

Less than two weeks later, in February 2022, M.G. and R.C. (appellants) filed a verified petition to remove K.S. as N.S.'s conservator, as well as related petitions requesting that they be appointed as successor co-conservators for N.S. In support of their removal petition, appellants alleged that K.S. allowed and encouraged her husband (A.S.) to "engage in frequent force-feeding of [N.S]." The removal petition further alleged that N.S. had "significantly regressed in many areas" since K.S. became his conservator in 2019, giving examples. As part of their removal petition, appellants requested an award of attorney fees and costs, citing Probate Code section 2653, subdivision (c)(1).

In March 2022, K.S. filed a written opposition to the removal petition and the related requests for the appointment of appellants as successor co-conservators. Among other things, K.S. denied that her husband (A.S.) was force-feeding N.S. and disputed that N.S. had regressed. According to K.S., the removal petition appeared to be retaliation for her repeated requests for appellants to "step back from trying to control [N.S.'s] health and education," given that M.G. was no longer his legal guardian. In her

3

opposition, K.S. requested an award of attorney fees and costs without citing a statutory basis, based on her "good-faith belief" that denial of the removal petition was in N.S.'s best interests.

## D.     Appointment of Counsel for N.S.

In or around April 2022, a public defender was appointed to represent N.S. During the course of the proceedings in the trial court, the public defender opposed appellants' petition for removal and their related request for a restraining order under the Act (described below).  The public defender requested attorney fees as the prevailing party pursuant to section 15657.03, subdivision (t), or, in the alternative, as an exceptional circumstance.

## E.     Restraining Order Requests and Settlement Conference

In early January 2023, appellants filed a request for a restraining order under the Act, which "affords certain protections to elders and dependent adults." (*Winn v. Pioneer Medical Group, Inc*. (2016) 63 Cal.4th 148, 152.)  Appellants sought an order allowing them contact with N.S. every week from 10:00 a.m. on Monday to 12:00 p.m. on Wednesday.  This request was based on a change in law effected by Assembly Bill No. 1243 (2021-2022 Reg. Sess.), which was enacted to " ' "help[] prevent isolation of vulnerable Californians by allowing family members or other persons with a pre-existing relationship (as defined in the bill language) to petition the court through the existing elder and dependent adult abuse restraining order process for orders enjoining the isolation and allowing contact ... as long as the elder or dependent adult wants that contact." ' " (*Newman v. Casey* (2024) 99 Cal.App.5th 359, 387-388.)  In support of their request, appellants asserted (among other things) that since N.S. moved out of M.G.'s home in 2019, he had "been extremely enthusiastic" about spending time with her.

Less than two weeks later, in mid-January 2023, K.S. filed a response to appellants' request for a restraining order.  She also filed her own request for a restraining

order under the Act, which sought an order prohibiting M.G. from having any contact with N.S. and his family. The next day, the trial court issued a temporary restraining order in favor of K.S. against M.G. Although unclear as to the date the order was issued, the record reflects that appellants' request for a restraining order allowing them contact with N.S. was "initially denied."

At a May 2023 settlement conference, the parties agreed that appellants could have contact/visitation with N.S. for several hours on 10 specific days in May and June 2023. The parties also agreed to other terms, including (as relevant here) that K.S. would "dismiss" without prejudice the temporary restraining order issued against M.G. However, due to an incident that occurred during appellants' second visit with N.S., the parties' visitation agreement was terminated.

In August 2023, K.S. refiled her request for a restraining order against M.G. for the protection of N.S. and his family, which included a request for attorney fees and costs under section 15657.03. On that same day, a second temporary restraining order was issued against M.G. In November 2023, M.G. filed a response to K.S.'s request for a permanent restraining order. In connection with her response, M.G. requested an award of attorney fees and costs.

F.      *Bench Trial and Statement of Decision*

As set forth in the trial court's statement of decision, during a seven-day bench trial that began in August 2023 and concluded in November 2023, the court heard all the competing claims together as agreed on by the parties. The evidence included testimony from various witnesses who had observed N.S. interact with his family and appellants, as well as from two medical doctors, including the former spouse of M.G. In December 2023, the trial court issued a detailed written statement of decision. In denying the petition for removal, the court found that appellants had failed to prove N.S. was isolated, neglected, or abused. The court also found that appellants had failed to establish that it was *not* in N.S.'s best interest for his mother (K.S.) to remain his conservator. The court

later explained, in connection with the parties' respective motions for an award of attorney fees, that appellants did not establish by a preponderance of the evidence that N.S. wanted to visit with them, that N.S. was being abused, or that it was in N.S.'s best interest to visit with them or have them appointed as successor co-conservators. Rather, the court found the evidence showed that appellants "were not suitable caregivers" for N.S. based on their inability to adequately supervise him, noting that "visitation [with appellants] outside [N.S.'s] home resulted in potential danger to [N.S.], the public, and law enforcement."

As for the parties' competing requests for a restraining order, the trial court denied appellants' request for visitation with N.S. and denied K.S.'s request for a permanent restraining order against M.G., without prejudice. The court later explained, in connection with the parties' respective motions for an award of attorney fees, that it denied K.S.'s request without prejudice because "there were adequate protections in place … that would make sure that both [N.S. and his family] were adequately protected, not because [K.S.] failed [to] prov[e] that it would be an appropriate legal outcome to have the restraining order in place." The court noted that it had "likely" erred by failing to grant the permanent restraining order requested by K.S. and explained that K.S. "certainly proved" that a permanent restraining order would have been "an appropriate legal outcome," and that the only reason such relief was not granted was because the court wanted to leave open the "possibility for the parties to arrange visits [with N.S.] in the future."

In February 2024, the court denied appellants' motion for new trial.

*G.    Motions for Attorney Fees*

In May 2024, after a hearing, the trial court granted K.S.'s motion for attorney fees and costs, awarding her $73,775 in fees and $3,872.17 in costs.[3]  The court also granted the motion for attorney fees filed by N.S.'s court-appointed counsel (public defender), awarding him $19,035.  The court found that K.S. and N.S. were the prevailing parties on all matters—the removal petition as well as the competing requests for a restraining order.  The court determined that because the issues in this case were intertwined and because the parties agreed that the court "should hear all of the evidence in all of the matters during the course of the trial," the fee awards should not be limited to the amount of time devoted to the requests for a restraining order.  Accordingly, in determining the reasonable fees to award, the court did not decide what portion of the hours were spent by the prevailing parties on the removal petition as compared to the hours spent on the request for a restraining order.  However, the court explained that because the basis for awarding attorney fees was limited to the provisions of the Act, which covered only the request for restraining order, "there will and should be a discount in the attorney's fees requested by" K.S.  In deciding not to "parse[]" the fees between those incurred in litigating the removal petition versus those incurred in litigating the competing requests for a restraining order, the court explained that apportionment of the fees was not "necessary because the overarching concern … [was] the best interest of [N.S.]."  The court further explained:  "Some of the work on behalf of [K.S.] and all of the work on behalf of [N.S.] performed by counsel [related to the removal petition] served as a necessary foundation and familiarity with the facts and legal issues impacting on the 2023 matters [(i.e., requests for a restraining order)].  The Court previously determined that the issues [involving the Act (i.e., competing requests for a restraining order)] were

---

[3]  This award was less than the amount sought by K.S.—$80,605 in fees and $5,697.49 in costs.

7

intertwined with the other issues [(i.e., removal petition)] so as to make it impossible to differentiate.  The work performed in 2022 [related to the removal petition] allowed counsel for [K.S.] and [N.S.] to have a ready familiarity with critical issues so as to not repeat or start anew with the discovery process."

As for M.G., the trial court denied her motion to strike or tax costs and denied her motion for attorney fees.

## H.    *Appeal and Appellate Briefing*

Appellants filed a timely notice of appeal.  This matter was fully briefed in late December 2025 and assigned to this panel in late January 2026.  While M.G. was represented by counsel in the trial court, she and R.C. (who was not represented by counsel in the trial court) proceed as self-represented litigants on appeal.

## II.   DISCUSSION

Appellants argue the fee order must be reversed because there was no legal basis authorizing an award of attorney fees to K.S. beyond those which she incurred in defending against their request for a restraining order under the Act.  In other words, appellants claim reversal is required because the trial court failed to properly apportion fees by limiting the fee award to the fees associated with their request for a restraining order.  In appellants' view, the court erred in awarding K.S. fees under the Act for the time she spent litigating the removal petition.  Appellants further argue that reversal is required because there is no legal basis authorizing an award of attorney fees to the public defender appointed to represent N.S.  Appellants add that even if such authority existed, the matter must be reversed due to the trial court's failure to properly apportion fees by limiting the fee award to the fees associated with their request for a restraining order.

## A.    *Relevant Legal Principles*

The Act (§ 15600 et seq.) was enacted in 1982 to "protect a particularly vulnerable portion of the population from gross mistreatment in the form of abuse and custodial

8

neglect." (*Delaney v. Baker* (1999) 20 Cal.4th 23, 33 [explaining that " 'the Legislature recognized "that dependent adults may be subjected to abuse, neglect, or abandonment and that this state has a responsibility to protect such persons' "].) Under the Act, a trial court may issue a protective (or restraining) order to protect a "dependent adult" who has suffered "abuse" within the meaning of section 15610.07. (§ 15657.03, subds. (a)(1), (b)(1), (b)(5).) Among other things, "abuse of a dependent adult" means: "(1) Physical abuse, neglect, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering. [¶] (2) The deprivation by a care custodian of goods or services that are necessary to avoid physical harm or mental suffering." (§ 15610.07, subd. (a)(1)-(2).)

A petition for a restraining order may be brought on behalf of an abused dependent adult by a conservator or a trustee of the dependent adult, an attorney-in-fact of the dependent adult who acts within the authority of a power of attorney, a person appointed as a guardian ad litem for the dependent adult, or *other person legally authorized to seek the relief.* (§ 15657.03, subd. (a)(2)(A).) If the petition for a restraining order alleges abuse of a dependent adult in the form of isolation (as appellants alleged here), the term "other person legally authorized to seek the relief" includes an "interested party," (§ 15657.03, subd. (a)(2)(B)(i)), which means "an individual with a personal, preexisting relationship with the … dependent adult." (§ 15657.03, subd. (b)(3).) An interested party, however, may only obtain an order enjoining a party from abusing a dependent adult by isolating them. (§ 15657.03, subds. (a)(2)(B)(ii), (b)(5)(E).)

An order may be issued to restrain the respondent (person against whom the protective order is sought) for the purpose of preventing a recurrence of isolation if the court finds by a preponderance of the evidence, to the satisfaction of the court, that the following requirements are met: (1) the respondent's past act or acts of isolation of the dependent adult repeatedly prevented contact with the interested party; (2) the dependent adult expressly desires contact with the interested party; (3) the respondent's isolation of

the dependent adult from the interested party was not in response to an actual or threatened abuse of the dependent adult by the interested party or the dependent adult's desire not to have contact with the interested party. (§ 15657.03, subd. (b)(5)(E)(i).)

"The prevailing party in an action brought under … section [15657.03] may be awarded court costs and attorney's fees, if any." (§ 15657.03, subd. (t).) The purpose of this provision is to protect an especially vulnerable portion of the population by creating an incentive for attorneys to represent dependent adults who have been abused and/or neglected. (See *Bickel v. Sunrise Assisted Living* (2012) 206 Cal.App.4th 1, 11-12.)

B.      *Standard of Review*

"Under the American rule, each party to a lawsuit ordinarily pays its own attorney fees. [Citation.] Code of Civil Procedure section 1021, which codifies this rule, provides: 'Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties.' " (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751.)

" ' "On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law." ' [Citation.] In other words, 'it is a discretionary trial court decision on the propriety or amount of statutory attorney fees to be awarded, but a determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo.' " (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC, supra*, 3 Cal.5th at p. 751; see also *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332 [a trial court's determination that a litigant is a prevailing party, along with its award of fees and costs, is reviewed for abuse of discretion, but interpretation of a statute is a question of law subject to de novo review].)

"[T]he trial court has broad authority to determine the amount of a reasonable fee." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.) " 'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong" '—meaning that it abused its discretion." (*Ibid*.) Abuse of discretion will be found only when it is shown there was no reasonable basis for the trial court's action. (*Citizens Against Rent Control v. City of Berkeley* (1986) 181 Cal.App.3d 213, 233.) In the context of an award of attorney fees, reversal is only required where the trial court's decision "exceeded the bounds of reason." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478.)

The apportionment of attorney fees is also well within the trial court's discretion. (*El Escorial Owners' Assn. v. DLC Plastering, Inc*. (2007) 154 Cal.App.4th 1337, 1365.) "Attorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed." (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129-130; *Akins v. Enterprise Rent-A-Car Co*. (2000) 79 Cal.App.4th 1127, 1133.) "Apportionment is not required when the claims for relief are so intertwined that it would be impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units." (*Bell v. Vista Unified School Dist*. (2000) 82 Cal.App.4th 672, 687; see *Drouin v. Fleetwood Enterprises* (1985) 163 Cal.App.3d 486, 493 [attorney fees need not be apportioned between distinct causes of action when the various claims at issue involve a common core of facts or are based on related legal theories].)

The party challenging a fee award " 'bear[s] the burden of affirmatively establishing that the trial court abused its discretion.' [Citation.] As with most trial court orders, we ' presume the trial court's attorney fees award is correct." ' " (*In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 954.) The appellant has the burden of rebutting the presumption of correctness, regardless of the applicable standard of review. (*Association*

11

*for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023) 94 Cal.App.5th 764, 777 [appellant must affirmatively show the trial court erred even if the de novo standard of review applies].)

The burden of demonstrating error requires an appellant to do more than just criticize a ruling in a conclusory, truncated fashion: an appellant must *develop* a legal argument in a sufficiently clear manner to enable us to evaluate its soundness. " '[A]n appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.' " (*United Grand Corp. v . Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146.) "We may and do 'disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt.' " (*Id.* at p. 153; see *Doe v. McLaughlin* (2022) 83 Cal.App.5th 640, 654 [it is not sufficient simply to cite legal authority without explaining how it applies].) An appellant must convince us, by reasoned legal analysis, that the trial court committed reversible error, and when an appellant fails to do so we may reject the appellant's argument on its face as insufficient to demonstrate error. (*Bishop v. The Bishop's School* (2022) 86 Cal.App.5th 893, 910.)

C.    *Analysis*

It is clear that subdivision (t) of section 15657.03 authorizes an award of attorney fees for a prevailing party in connection with a request for a restraining order under the Act. Here, there were competing requests for restraining orders at play. These requests were litigated together with appellants' petition for removal of a conservator. The parties do not argue on appeal that there is an independent statutory basis to award attorney fees to a prevailing party in connection with a petition for removal. Thus, the central question before this court is not whether the trial court *could* have apportioned the attorney's fees between those associated with the removal petition and those associated with the competing requests for a restraining order, and awarded fees for one but not the other, but

12

whether it *erred in declining* to do so. Having reviewed the record, we discern no abuse of discretion, as we next explain.

Here, appellants' petition for removal alleged that K.S. allowed her husband (A.S.) to abuse N.S. by force-feeding him. The petition further alleged that K.S. was not acting in the best interest of her son (N.S.), including rarely taking N.S. out of his home, failing to "mask train" him so he could participate in activities he was accustomed to, and by failing to properly address his dental needs and language skills. In response, K.S. denied the allegations of abuse and asserted that it was not in N.S.'s best interests to remove her as conservator. K.S. claimed that N.S. was well cared for and had experienced significant improvement since she became his conservator in 2019. K.S. also asserted that there were many instances where M.G. (N.S.'s former legal guardian) had not adequately supervised N.S., and that M.G. became aggressive and disruptive toward N.S.'s family after K.S. asked M.G. and her husband (R.C.) to stop trying to control N.S.'s health and education.

While the removal petition was pending, appellants, as "interested parties," filed a request for a restraining order under the Act, which sought an order allowing them contact (or visitation) with N.S. According to appellants, they sought such relief as an alternative to being appointed as co-successor conservators for N.S. In support of their request for a restraining order, appellants claimed that N.S. was "extremely enthusiastic" about visiting with them, but that K.S. had prevented them from having any contact with N.S. after M.G. objected to the alleged "force-feeding." K.S. opposed the relief sought by appellants and filed her own request for a restraining order against M.G. for the protection of N.S. and his family. After the parties' May 2023 settlement agreement fell apart, which included K.S.'s agreement to dismiss the temporary restraining order issued against M.G. and to allow appellants to visit with N.S., K.S. refiled her request for a restraining order against M.G. Among other things, K.S. claimed that a restraining order was necessary due to M.G.'s aggressive and disruptive behavior toward N.S.'s family,

13

including several instances where M.G. came to the family home unannounced, forced her way into the home, and harassed the family. In response, M.G. claimed that these allegations were false. As part of her response, M.G. explained that her request for a restraining order was filed so she could have contact with N.S. in the event the petition for removal was denied. M.G. also noted that the parties were "currently in the middle of trial addressing both of these matters and ha[d] stipulated to having the matters alleged in [K.S.'s request for a restraining order] heard at the same time." As previously indicated, the challenged fee order was issued after the trial court denied appellants' petition for removal and their related request for a restraining order.

We see no abuse of discretion in the trial court's refusal to allocate attorney's fees between those fees associated with the removal petition and those fees associated with the competing requests for a restraining order under the Act. The record reflects that the underlying issues concerning these matters were intertwined and even inextricably linked. The matters involved the same evidence and their resolution ultimately hinged on what was in the best interests of N.S. In answering that question, the court received evidence from numerous witnesses about N.S.'s medical condition and how he was cared for by his parents versus appellants' care and allegations. This evidence was received during a seven-day bench trial after the parties agreed that the removal petition and the competing requests for a restraining order should be "heard at the same time." Appellants have not suggested, and we do not discern, a record-supported method for parsing out the fees associated with the removal petition versus the fees associated with the parties' competing requests for a restraining order. Indeed, we do not see (and appellants do not identify) a distinct boundary or clear line of demarcation between these matters.[4] Nor do we see a logical way to allocate (or apportion) fees in light of the

---

[4] In the trial court, M.G. conceded that the matters before the court (petition for removal and competing requests for a restraining order) involved "essentially the same" evidence.

14

intertwined nature of the matters before the court, the resolution of which involved consideration of a common set of facts.

On the record before us, we cannot conclude the trial court exceeded the bounds of reason. The court's refusal to apportion fees was not arbitrary, capricious, or patently absurd. Indeed, given the record and the purpose of the attorney fee provision in the Act—to protect an especially vulnerable portion of the population by creating an incentive for attorneys to represent dependent adults who have been abused and/or neglected (see *Bickel v. Sunrise Assisted Living, supra*, 206 Cal.App.4th at pp. 11-12)— the trial court acted well within its discretion when it determined that apportionment was not required because it was impossible or impracticable to separate counsel's time into compensable (work performed related to the restraining orders) and non-compensable (work performed related to the removal petition) units.

Appellants, for their part, have failed to carry their burden to establish reversible error. We find unpersuasive the various arguments they advance for reversal, including their contention that neither K.S. nor N.S. was a prevailing party under the Act. The record makes clear that K.S. and N.S. prevailed on a practical level, as they realized their litigation objectives while appellants did not. Appellants insist the trial court erred by declaring K.S. the prevailing party because it denied her request for a permanent restraining order without prejudice. As we next explain, this argument fails to persuade.

Because section 15657.03 does not define "prevailing party," the general definition of "prevailing party" in Code of Civil Procedure section 1032 may be used.

---

This concession was made in a pretrial document—Issues Conference Statement—filed by M.G. in May 2023. Although this document was not part of the appellate record, N.S. moved to augment the record to include it after oral argument was scheduled. K.S. filed a joinder to N.S.'s motion. At oral argument, R.C. indicated that he had no objection to the motion, and no written opposition was filed to the motion by R.C. or M.G. Under the circumstances presented, we grant N.S.'s motion to augment the record. (Cal. Rules of Court, rule 8.155(a)(1).)

(*Adler v. Vaicius* (1993) 21 Cal.App.4th 1770, 1777.) On this record, the court could have reasonably concluded that K.S. was the prevailing party because appellants did not recover any relief against her. (See Code Civ. Proc., § 1032, subd. (a)(4) ["prevailing party" includes "a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant"].) Alternatively, the court could have reasonably concluded that, even if K.S. was not the prevailing party under any of the enumerated grounds set forth in section 1032, subdivision (a)(4), K.S. was the prevailing party because she prevailed on a "practical level." (See *Graciano v. Robinson Ford Sales, Inc*. (2006) 144 Cal.App.4th 140, 150-151 [when a statute authorizing an award of attorney's fees does not define the term prevailing party, the court should determine prevailing party status based on which party succeeded on a practical level by analyzing which party realized its litigation objectives].) Here, the record reflects that K.S. achieved her litigation objectives, which were the denial of the removal petition and the avoidance of a restraining order that would have permitted appellants to visit with N.S. Realizing a litigation objective is a permissible reason to award attorney fees where, as here, "any party recovers other than monetary relief and *in situations other than as specified*" in section 1032, subdivision (a)(4). (See *Pirkig v. Dennis* (1989) 215 Cal.App.3d 1560, 1565-1566; *Friends of Spring Street v. Nevada City* (2019) 33 Cal.App.5th 1092, 1104 [explaining that the " 'in situations other than as specified' " prong of Code of Civil Procedure section 1032 authorizes the trial court in its discretion to determine the prevailing party by comparing the relief sought with that obtained, along with the parties' litigation objectives, as disclosed by their pleadings, briefs, and other such sources].)

As for N.S., we conclude appellants have failed to demonstrate the trial court abused its discretion in finding that he was a prevailing party. The record reflects that N.S. succeeded at a practical level by realizing his litigation objectives. As noted *ante*, N.S.'s court-appointed counsel—the public defender—opposed the removal petition and

appellants' related request for a restraining order under the Act, both of which were denied by the trial court. On appeal, appellants' opening brief offers no reasoned legal analysis, supported by citation to pertinent authority, convincing us the trial court erred. As such, we reject the appellants' argument on its face as insufficient to demonstrate reversible error. (*Bishop v. The Bishop's School, supra*, 86 Cal.App.5th at p. 910.) And appellants have not cited any authority convincing us that reversal is required under the circumstances presented. The cases appellants rely upon are inapposite, including *Carver v. Chevron U.S.A., Inc.* (2004) 119 Cal.App.4th 498; see *id*. at pp. 501, 503-505 [addressing whether fees were recoverable for defending antitrust claims under the Cartwright Act (Bus. & Prof. Code, § 16720 et seq.) (which contained a unilateral fee-shifting provision that only allowed fees for a prevailing plaintiff) and other overlapping contract claims].)

Citing *Carver v. Chevron U.S.A., Inc., supra*, 119 Cal.App.4th 498 and other cases, appellants argue that the unilateral fee-shifting provision set forth in Probate Code section 2653 only allows a prevailing petitioner to recover attorney fees when a conservator is removed for cause. They contend this statutory provision "operate[s] to prevent any fee award" for the time spent by K.S. and N.S. defending against the removal petition and any "overlapping facts and issues," including the competing requests for a restraining order under the Act. Although we find *Carver* inapposite, this argument fails for a more fundamental reason: It was not raised in the trial court. As a result, we deem the argument forfeited. (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564 ["Failure to raise specific challenges in the trial court forfeits the claim on appeal"].)

17

## III.   DISPOSITION

The fee order is affirmed.  Respondents shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)

_____/S/_____
RENNER, Acting P. J.

We concur:

_/S/_____
KRAUSE, J.

_/S/_____
WISEMAN, J.*

---

*  Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18